UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-cr-447 (NEB/DTS)

UNITED STATES OF AMERICA,

         Plaintiff,

    v.

ABDIRASHID BIXI DOOL,

         Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant, Abdirashid Bixi Dool, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, if there are remaining counts, the government agrees to move to dismiss those remaining charges against the defendant contained in the Indictment.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the

1

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From about March 2021 to December 2021, two Minnesota non-profits, Bilaal Mosque Inc. ("Bilaal") and Multicultural Resource Center Inc. ("MRC"), participated in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

At various points during this period, Conspirator A (an imam at Bilal Mosque), Conspirator B (the Principal of Gedo Community Services), the defendant, and others engaged in a scheme to submit inflated claims for reimbursements for meals provided through the program. The defendant agrees the scheme spanned from about March 2021 to December 2021, and agrees he joined the scheme during its existence. The defendant further agrees that, at times during the scheme, he represented he was acting on behalf of Bilaal and MRC in their capacity as non-profits.

In March and April 2021, Bilaal and MRC applied to enroll in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. The applications were accepted. Bilaal began operating a food site located in Pelican Rapids, Minnesota; and MRC began operating a food site located in Moorhead, Minnesota.

At those sites, Bilaal and MRC claimed to serve tens of thousands of meals to children, for months spanning from March 2021 through about December 2021. In reality, their submissions were greatly inflated and the Bilaal and MRC operations served only a small fraction of the claimed meal amounts.

2

In furtherance of the scheme, the defendant completed meal count sheets falsely representing that both sites fed thousands of meals to children daily. At times, the defendant represented in those meal counts to be serving over 40,000 meals to children every week. He signed those meal counts, representing them to be accurate. However, as the defendant knew, those meal counts were false and inflated. The defendant then caused those counts to be submitted to Feeding Our Future in support of those sites' fraudulent claims for reimbursement.

The program required participants submit invoices detailing food purchased and used to provide meals. In furtherance of the scheme, the defendant caused to be submitted invoices that were inflated, knowing they were inflated. Many of the invoices the defendant used to substantiate the inflated reimbursement claims were submitted through a company called Smart Drive LLC, which was a "vendor" under the program. On at least one occasion, the defendant created a fraudulent invoice reflecting Smart Drive LLC purchased a higher quantity of food than it actually did. He created this document at the direction of a Feeding Our Future employee who told him what quantities and prices needed to be in the invoice to support the reimbursement claims.

The defendant also caused to be submitted fake rosters of children who were served meals. He did so knowing those rosters did not accurately reflect the identities and numbers of children fed at his sites. At times, for example, the defendant and the conspirators would take the names of people who received food at the Bilaal and MRC sites, then would generate rosters repeatedly duplicating those names (changing the

ages and spellings of individuals therein) to generate fake rosters supporting inflated billings.

Between approximately March 2021 and February 2022, Bilaal and MRC claimed to have served over 505,000 meals to children. As a result of those claims, the Minnesota Department of Education paid out nearly $1.1 million dollars to Bilaal and MRC through Feeding Our Future.

To further this scheme to defraud the Federal Child Nutrition Program, the defendant caused interstate wires to be sent. This included the wire alleged in Count 1, which was an email from the defendant to himself attaching Bilaal attendance rosters, sent on or about December 1, 2021.

**Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

3.      **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to

4

testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

4.      **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

5.      **Statutory Penalties**. The defendant understands that Count 1 of the Indictment, charging Wire Fraud in violation of 18 U.S.C. § 1343 is a felony offense that carries the following statutory penalties:

a.  a maximum term of imprisonment of 20 years in prison;

b.  a supervised release term of up to three years;

c.  a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater; and

d.  a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

6.  **Guidelines Calculations.**  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.*  Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence.  The parties stipulate to the following guidelines calculations:

a.  Base Offense Level. The parties agree that the base offense level is 7.  U.S.S.G. § 2B1.1(a)(1).

b.  Specific Offense Characteristics. The parties agree that a 14-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(H) because the loss was more than $550,000 but not more than $1.5 million. The parties agree that the offense level should be increased by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits) and as set out in Guidelines § 2B1.1(b)(12). The parties agree that the offense level should be increased by 2 levels pursuant to Guidelines § 2B1.1(b)(9) because the offense involved the use of a religious or non-profit entity. The parties agree that no other specific offense characteristics apply.

c.  Chapter 3 Adjustments.  The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.  Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As

6

the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category 0. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.  Guidelines Range. If the adjusted offense level is 20, and the criminal history category is I, the Sentencing Guidelines range is **33 - 41 months of imprisonment.**

7

h.    Fine Range. Fine Range. If the adjusted offense level is 20, the Sentencing Guidelines fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

i.    Supervised Release. The Sentencing Guidelines' term of supervised release of up to three years. U.S.S.G. § 5D1.2.

7.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.      **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate.  The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10.     **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3.  The defendant agrees to pay the special assessment.

11.     **Restitution Agreement**.  The defendant understands and agrees that the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of the defendant's crime(s).  The defendant agrees that restitution is owed and agrees that the Court shall order the defendant to pay restitution in an amount that does not exceed $356,514.00 and that is not less than $330,472.00.

12.     **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning,

and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud charged in Count 1 of the Indictment. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the property subject to forfeiture includes but is not limited to the real property and all structures located at 26 Mill Ave W, Pelican Rapids, Minnesota.

The defendant consents to the entry of a money judgment forfeiture in an amount that does not exceed $356,514.00 and that is not less than $330,472.00, which represents the proceeds the defendant obtained from the wire fraud scheme alleged in Count 1 of the Indictment. The defendant will receive a credit against the money

judgment forfeiture for the net value of all property that is forfeited from the defendant in this matter.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

The defendant agrees that the United States may, at its option, forfeit the Property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest she may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company she owns or controls, on any grounds.

14.    **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and

11

an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

15.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16.    **Complete Agreement.**   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.  By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed

12

every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: _____ July 13, 2026 _____

BY: _____
REBECCA E. KLINE
MATTHEW C. MURPHY
AUSTIN L. BOWYER
Assistant United States Attorneys

Date: _____ 07/13/26 _____

_____
ABDIRASHID BIXI DOOL
Defendant

Date: _____ 7/13/26 _____

_____
IAN S. BIRRELL, Esq.
Counsel for Defendant

13